Filed 8/6/21  Nourafchan v. Chateau Reeves CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| RAFI NOURAFCHAN et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>CHATEAU REEVES, LLC et al.,<br><br>    Defendants and Respondents. | B300382 c/w B302625<br><br>(Los Angeles County<br>Super. Ct. Nos. BC683068,<br>17STPB10158) |

APPEAL from judgments of the Superior Court of Los Angeles County, Michael C. Small, Judge.  Affirmed.

Berger ♦ Harrison, Benjamin Berger and Richard J. Radcliffe for Plaintiffs and Appellants.

Lurie, Zepeda, Schmalz, Hogan & Martin, Troy L. Martin and Jimmy C. Chang for Defendants and Respondents.

_____

This case involves an intra-family dispute over a parcel of property – specifically, the mother's deed of an interest in property known as "Sherman Way" to one of her sons. When Sherman Way was sold, the son invested the proceeds in a second property ("Reeves"). He then put Reeves in trust for one of his sisters. After his death, two other siblings brought two related actions against the sister and the trustees of the deceased brother's trust, seeking a share of Reeves, on the basis that it had been understood within the family that the properties had been held for the benefit of all siblings. Defendants obtained summary judgment in both actions, on the ground that an oral promise to hold property for others is unenforceable. In addition, the court rejected, as unpleaded, an argument raised by the plaintiffs for the first time in opposition to the motions for summary judgment. Plaintiffs appealed in both actions. We consolidated the appeals and now affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The legal issues in this case arise from a somewhat complicated factual and procedural scenario.

### 1. *The Family Members*

We begin by identifying the members of the Nourafchan family relevant to this appeal.

The family patriarch was Mousa ("Father"). His wife was Aghdas ("Mother"). The only other individual in this generation relevant to this appeal is Father's brother, Elis ("Uncle"). All three of these individuals are deceased.

Father and Mother had five children, four of whom are relevant to this case. Two of them, Rafi and Keyhan, are the plaintiffs. Their sister, Zaman, is one of the defendants. A fourth, Darius, is now deceased. Darius is the son who held

2

partial title to Sherman Way and, subsequently, title to Reeves. Darius's decision to put Reeves in trust for Zaman triggered the dispute in this case. (Darius also excluded the fifth sibling from Reeves; that sibling is not involved in this appeal.)

## 2. *The Chain of Title*

For family purposes, Uncle was the initial owner of Sherman Way. In 1981, Uncle deeded the property half to Father and half to another one of their brothers, who is not a party in the appeal.[1]

In 1987, Father deeded his interest to Mother, as her sole and separate property. The deed was not signed by Father, but by Uncle, as "his attorney in fact."

In 1989, Mother quitclaimed her interest to son Darius.[2]

In 2000, Darius and the other owners of Sherman Way sold the property to a third party.

The following month, Darius purchased Reeves. Plaintiffs contend that Darius purchased Reeves with the proceeds of his share of Sherman Way.

In 2013, Darius established a trust. The trust specifically provides for Zaman, the main defendant here, and specifically excludes his other siblings, including plaintiffs. Darius then deeded Reeves to himself as trustee of the trust.[3]

---

[1]   This brother subsequently transferred his half to two of his family members.

[2]   The deed stated, for purposes of documentary transfer tax, that "[t]his conveyance is to secure a debt." The parties make no reference to this representation.

[3]   Two months later, Darius, as trustee, conveyed the property to Chateau Reeves, LLC. Plaintiffs allege that

3

Darius died in 2017, leaving Zaman as the sole beneficiary of his trust.

### 3. *The Two Actions*

Following Darius's death, plaintiffs filed two simultaneous actions to obtain a partial interest in Reeves. First, they filed a civil action against sister Zaman and the trustees of Darius's trust. Second, they filed a petition in probate court regarding Darius's trust, seeking to confirm their partial ownership of Reeves, and for an accounting.[4] The actions were deemed related and were heard before the same judge.

Ultimately, the defendants would obtain summary judgment in the civil case and, thereafter, in the probate case. We discuss the entirety of the proceedings on the civil case before briefly turning to the probate case, which, for our purposes, was largely identical.

### 4. *Allegations of the Operative Complaint*

The operative complaint is plaintiff's first amended complaint for declaratory relief, filed April 19, 2018. Plaintiffs alleged two causes of action for declaratory relief.

The first challenged the validity of the 1987 deed from Father to Mother, signed by Uncle as Father's attorney in fact. Plaintiffs argued that Uncle "did not have the authority to effect the transfer on behalf of [Father]. As a result[,] the 1987 Deed

---

defendant Zaman is the sole manager of the LLC. Plaintiffs both sued the LLC and claimed a beneficial interest in it. For our purposes, the LLC is aligned with Zaman, and further references to Zaman include the LLC where appropriate.

[4] Although plaintiffs were "petitioners" in the probate case, we refer to them as plaintiffs in both actions for convenience.

4

was ineffective." Plaintiffs sought a declaration that the deed was invalid or otherwise ineffective to transfer any interest Father held in Sherman Way.[5]

The second cause of action challenged Darius's act of putting Reeves in trust for his sister alone. As to the intra-family transfers of Sherman Way, plaintiffs alleged: "Within [Father's] family, title was transferred several times, with all parties in agreement, sharing the understanding that the ownership was not personal to any one of them but collective, for the benefit of [Father], his wife, and his children - regardless of the words of any particular deed." Representing that Darius invested the proceeds of Sherman Way in Reeves, plaintiffs alleged that Darius "held some or all of the ownership in the Reeves Property for the benefit of his siblings." Plaintiffs alleged that a controversy has arisen as to whether Darius held Sherman Way and then Reeves as a constructive trustee for the benefit of his siblings, and sought a declaration that he did.

5. *Discovery*

During discovery, defendants disclosed to plaintiffs two powers of attorney Father had signed in favor of Uncle – one in 1958 and the other in 1970. Thereafter, plaintiffs responded to defendants' contention interrogatories. When asked to state all facts supporting their allegation that Uncle " 'did not have the authority to effect the transfer' " to Mother on behalf of Father, plaintiffs each responded, "At the time the [operative complaint]

---

[5] While the operative complaint did not explain the effect of this sought-after voiding, plaintiffs would later argue that Father died intestate, so they would have inherited a partial interest in Sherman Way as his heirs. They took the position that Darius was therefore an involuntary trustee of Reeves for their benefit.

was filed, Responding Party did not think a power of attorney existed."

**6.** ***Motion for Summary Judgment in the Civil Case***

Defendants then moved for summary judgment on the first amended complaint in the civil case.

A. *Defendants' Motion*

As to the first cause of action that sought to declare the deed from Father to Mother ineffective, defendants relied on the powers of attorney which had granted Uncle the right to transfer Father's property. Defendants also relied on plaintiffs' discovery responses which admitted that the cause of action was asserted before plaintiffs knew that Father had executed the powers of attorney in favor of Uncle, and appeared to impliedly concede the cause of action was baseless in light of those documents.

As to the second cause of action that sought to impose a constructive trust over Reeves, defendants argued that the claim was barred by the statute of frauds, as an oral promise to hold property for others is unenforceable. Defendants further argued that there was no evidence that Darius had wrongfully acquired the properties at plaintiffs' expense, which could have conceivably given rise to a constructive trust.

B. *Plaintiffs' Opposition*

Plaintiffs filed their opposition on May 7, 2019 – more than a year after they filed their operative complaint. In their opposition, they raised, for the first time, the argument that the deed from Father to Mother was unenforceable because the powers of attorney in favor of Uncle had been revoked as a matter of law due to Father's incapacity. (Prob. Code, § 4155 [subject to limitations regarding notice, the authority of an attorney-in-fact under a nondurable power of attorney is

6

terminated by the incapacity of the principal to contract].)[6] Specifically, plaintiffs submitted their own declarations to the effect that, in 1987, prior to Uncle's execution of the challenged deed, Father had suffered a brain hemorrhage "which rendered him unconscious and in a coma from which he never recovered" until he passed away the following year.[7]

As to the cause of action seeking a constructive trust, plaintiffs argued that triable issues of fact existed that Darius had received title to Sherman Way from Mother on condition that he hold it for the benefit of all family members. They submitted their declarations *not* to the effect that such a condition had been imposed when Darius took title, but only that Darius had acknowledged that he held first Sherman Way, and then Reeves, for the benefit of his siblings. Plaintiffs suggested either one of two things was true about Darius's representations: (1) if they

---

[6] It is undisputed that the powers of attorney in favor of Uncle were nondurable, i.e., they did not expressly state the authority conferred would be exercisable notwithstanding the principal's subsequent incapacity. (Prob. Code, § 4124.) The parties, however, have not discussed the notice limitations of Probate Code section 4155, subdivision (b).

[7] Declarations were submitted only from plaintiffs. There was no evidence from doctors or other medical professionals opining as to Father's capacity throughout this time. Nor did plaintiffs submit declarations from any other family members. Plaintiffs' opposition to defendants' separate statement in support of summary judgment states that "[Plaintiffs] and Tannaz Sapponaro all support the contention that [Father] was incapacitated at the time the 1987 Deed was executed." Sapponaro is the daughter of plaintiff Rafi. Plaintiffs submitted no declaration (or deposition excerpt) from Sapponaro.

were true, there was an agreement that he held the property for the whole family; (2) if they were lies, Darius's deception caused plaintiffs to forego efforts to ensure they were on title.[8]

C.    *Defendants' Reply*

Defendants filed a reply. As to the first cause of action, on the validity of the 1987 deed, defendants argued that plaintiffs' theory that the powers of attorney were invalid due to Father's incapacity was a new theory, not pleaded in the complaint, and which could not be raised for the first time in opposition to summary judgment. Defendants also argued that plaintiffs' evidence on the point, consisting solely of vague statements that Father was at some points in 1987 observed to be unconscious, was not sufficient to raise a triable issue of fact of incapacity.

On the second cause of action, defendants argued that plaintiffs' declarations were insufficient to establish a triable issue of fact on their right to a constructive trust. Plaintiffs had stated only that Darius had said he held the property for them (and the rest of the family); these oral statements alone were insufficient.

---

[8]    Defendants had sought summary judgment on the alternative basis of the statute of limitations; the trial court would ultimately reject the theory as a basis for summary judgment. This latter argument appears to go to the statute of limitations defense, not the merits of the declaratory relief cause of action. In any event, plaintiffs did not specify what actions they had forgone to ensure they were on title. They argued generally that Darius's "deception caused his siblings to forego efforts they otherwise would have taken to assure (a) their right to Sherman Way was expressly recorded and (b) their parents' wishes were carried out."

8

D.    *Hearing and Ruling*

At the hearing on the motion, the trial court immediately suggested that plaintiffs could not pursue their theory of Father's incapacity, as it had not been pleaded.  Plaintiffs conceded that they did not know of this theory when they pleaded that Uncle lacked the authority to execute the 1997 deed – because they did not then know of the powers of attorney at all – but nonetheless argued that the theory that the powers of attorney were invalid due to incapacity was incorporated in their allegation that Uncle "did not have the authority to effect the transfer on behalf of [Father]."

The court then inquired of plaintiffs as to any other claimed triable issues of fact.  Plaintiffs relied on Darius's statements that he was holding the property for his fellow family members.  Defendants argued that the statements did not establish a triable issue of material fact, because there can be no oral agreement to hold a property in trust for another.

The trial court granted summary judgment, specifically holding that incapacity had not been pleaded or raised in discovery, so could not be raised for the first time in opposition to summary judgment.  Plaintiffs did not ask for leave to file a further amendment of the complaint.

**7.    *Motion for Summary Judgment in the Probate Case***

Having succeeded in obtaining summary judgment in the civil case, defendants filed a similar motion in the probate proceeding.

There was one difference between the two cases.  The operative probate petition was the first amended petition, filed April 18, 2018 – the petition sought to confirm ownership of an asset (Reeves) and sought an accounting.  Generally speaking,

9

that petition raised similar theories to the first amended complaint in the civil case – arguing both that the 1987 transfer from Father to Mother was "ineffective" and that Darius had held title to the properties for the benefit of his siblings.

However, on May 3, 2019 – after plaintiffs had filed their opposition to the summary judgment motion in the civil case – plaintiffs purported to file a "Verified Second Supplement to Petition," which suggested that the 1987 deed was ineffective because the powers of attorney had been revoked by operation of law due to Father's incapacity. This supplement – which, despite its caption, was not verified – states that it was filed "in order to address Probate Examiners Notes."[9] The Probate Examiner had apparently suggested a supplement was required "to explain why petitioners allege that the 1987 Deed was invalid and/or ineffective"; plaintiffs responded by explaining they were "of the opinion" that the deed was ineffective due to Father's incapacity. The plaintiffs did not, however, move to amend their petition to allege this incapacity theory.

When defendants moved for summary judgment in the probate case on identical grounds as their successful motion in the civil case, plaintiffs opposed by relying on the "Verified

---

[9] Los Angeles Superior Court Rules, rule 4.4 states that "Probate Notes" are available online in advance of a hearing. The "Matters to Clear" section of the Probate Notes "informs the parties of additional documents that are necessary to justify approval of the petition." Matters listed under "Matters to Clear" must be cleared prior to the hearing date, at risk of continuance or denial without prejudice. The appellate record does not contain the Probate Notes to which plaintiffs claim they were responding. Nor are they identified in the superior court docket.

10

Second Supplement to Petition," arguing that it had pleaded the incapacity theory. In reply, defendants argued that the document was a nullity that should be disregarded – it was neither verified nor an amended pleading, and plaintiffs had not sought leave to file the document.

At the hearing on the summary judgment motion, the court agreed with defendants that incapacity was not alleged, explaining, "There is no second amended petition. There's a supplement that's not verified by your clients. [¶] The supplement doesn't take the place of an amendment. The supplement supplements. It doesn't go back and make new allegations. That's the role of an amended petition." The court granted summary judgment.

## 8. *Judgment and Appeals*

Judgment was entered in favor of defendants in both cases. Plaintiffs filed timely notices of appeal. We consolidated the appeals for briefing, argument and decision.

### DISCUSSION

## 1. *Standard of Review*

On appeal of a summary judgment, "[w]e apply the same three-step analysis required of the trial court. First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact. [Citations.] In so doing, we liberally construe the opposing party's evidence, strictly construe the moving party's

11

evidence, and resolve all doubts in favor of the opposing party. [Citations.]" (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493–494.)

**2.      *As Incapacity Was Not Pleaded, Defendants Were Not Required to Defeat It***

As discussed above, a summary judgment motion must respond to the allegations of the pleadings. "The pleadings play a key role in a summary judgment motion and ' " 'set the boundaries of the issues to be resolved at summary judgment.' " ' [Citation.] '[T]he scope of the issues to be properly addressed in [a] summary judgment motion' is generally 'limited to the claims framed by the pleadings. [Citation.] A moving party seeking summary judgment or adjudication is not required to go beyond the allegations of the pleading, with respect to new theories that could have been pled, but for which no motion to amend or supplement the pleading was brought, prior to the hearing on the dispositive motion. [Citations.]' [Citations.]" (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444.)

Here, plaintiffs' theory that the powers of attorney under which Uncle acted when he signed the 1987 deed were ineffective because they had terminated as a matter of law due to Father's incapacity was simply not pleaded in the operative complaint in either action. While the first amended complaint and first amended petition had alleged the deed was "ineffective," neither pleading even mentioned the powers of attorney or Father's mental state, much less alleged that the former were invalid due to the latter. Plaintiffs' responses to contention interrogatories, which could have served to flesh out the narrow language of their pleadings, simply represented that plaintiffs had asserted the

12

deed was invalid before they knew of the existence of the powers of attorney. (See *Jacobs v. Coldwell Banker, supra*, 14 Cal.App.5th at p. 445 ["Finally, if plaintiffs' complaint left any doubt that their claims were based on the [theory pleaded], and not on the [theory raised in opposition to summary judgment], their interrogatory responses removed that doubt"].) Summary judgment was properly granted because plaintiffs had no admissible evidence to dispute that Father's interest in Sherman Way was legally conveyed from Father to Mother to Darius, and that Darius's purchase of Reeves did not redound to plaintiffs' benefit.

That plaintiffs attempted to plead the theory in their so-called "Verified Second Supplement to Petition," does not lead to a different result in the probate case. That document, which was an unverified attempt by plaintiffs' counsel to respond to the Probate Notes, was not a pleading. Were it an amended pleading, it could not be filed without leave.[10] (Code Civ. Proc., § 472.) In their reply brief on appeal, plaintiffs suggest the facts that the document was neither verified nor filed with leave of court should be overlooked (as "hair-splitting") because, despite

_____

[10] Our concern is not that the document purported to be a supplemental pleading rather than an amendment; that might be an improper elevation of form over substance. But the document was not a supplemental pleading; it did not allege "facts material to the case occurring after the former complaint." (Code Civ. Proc., § 464, subd. (a).) And even if properly characterized as a pleading, it was ineffective, as it was filed without leave. We believe, however, that the document was what it purported to be: an informal "supplement" in order to respond to the Probate Examiner's Notes – not by means of additional allegations, but by a simple explanation from an attorney.

these faults, the document nonetheless succeeded in giving defendants notice that plaintiffs were pursuing the incapacity theory. We disagree. Opposition papers are not a substitute for an amended pleading (*Hutton v. Fidelity National Title Co., supra*, 213 Cal.App.4th at p. 499); nor can an unverified "supplement" serve as such a substitute.

3. ***There Is No Triable Issue of Fact That Darius Held the Properties in Trust for All His Siblings***

In their second cause of action in both the amended complaint and the amended petition, plaintiffs sought a declaration of a constructive trust over Reeves, claiming that Darius held Sherman Way and, thereafter, Reeves for the benefit of all his siblings.

Defendants, as moving parties, established that Darius took title in his name alone, and that plaintiffs had no writings evidencing their claim that Darius took title on behalf of anyone else.

Plaintiffs sought to raise a triable issue of fact with their declarations that Darius, from time to time, orally represented that he held the properties for his siblings. That is, in a word, insufficient. Probate Code section 15206 explains that a trust in real property is not valid unless evidenced in writing or by operation of law. Conceding the absence of a writing, plaintiffs argue that the trust arose by operation of law, as a constructive trust. The doctrine of constructive trust is predicated on Civil Code section 2224, which provides, "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

14

To establish a constructive trust, plaintiffs must prove: the existence of a res (property or some interest in the property); the plaintiff's right to that res; and the defendant's acquisition of the res by some wrongful act. (*Pacific Lumber Co. v. Superior Court* (1990) 226 Cal.App.3d 371, 377.)

Plaintiffs' action fails on the third element; they cannot establish acquisition of the property by wrongful act. The only facts on which they rely are their declarations that after the fact Darius stated he held the property for them. "[T]he mere failure to perform an oral promise to convey real property is not a fraud and a constructive trust cannot be founded on such fact alone." (*Walter H. Leimert Co. v. Woodson* (1954) 125 Cal.App.2d 186, 192.)

On appeal, plaintiffs tack once more and now suggest that Darius "received title to Sherman Way from [Mother] on the condition that he hold it for the benefit of his siblings, in which case it was wrongful of him to later treat it as his own." But this was not pleaded; plaintiffs alleged only that all intra-family transfers were made "with all parties in agreement, sharing the understanding that the ownership was not personal to any one of them but collective, for the benefit of [Father], his wife, and his children – regardless of the words of any particular deed." The probate petition similarly alleged only that Darius held title "for the benefit of his siblings." At no point did plaintiffs plead that Mother transferred Sherman Way to Darius *on condition that* he hold it for his siblings. Even if it had been pleaded, plaintiffs presented no evidence on this point. Their only evidence in opposition to the motion for summary judgment was their declarations that Darius had, on some occasions, stated that he held the property for them. They presented no evidence that

15

Mother conditioned the transfer of her interest in Sherman Way to Darius on his promise to hold the property for his siblings. Without such evidence, plaintiffs do not raise a triable issue of fact that Darius's acquisition of the property was wrongful, and their claim for a constructive trust fails.

## *DISPOSITION*

The judgments are affirmed. Plaintiffs shall pay defendants' costs on appeal.


RUBIN, P. J.

WE CONCUR:



BAKER, J.



KIM, J.



16